317-0182, if you have a minute to assist, I'd like to call the next call. Counsel, you may proceed. Good morning, Your Honors. Counsel, my name is Nick Sheridan. I represent Mr. Keele Smith in this appeal. Unless the court would like a brief recitation of the facts, I'll get right to it. Your Honor, we made this appeal on a couple different issues, Your Honors. First, that the trial court's decision was an error regarding the Commission's decision regarding causation after October 9, 2011, and then following up with the TTD benefits, reasonable, and necessity of the medical treatment and prospective medical treatment being denied thereafter. The bulk of the argument has to do with the causation, Your Honors. The Commission found that Dr. Gleason was more persuasive based on objective medical and clinical evidence and a more complete understanding of traditional medical history. We're not arguing, and we believe that absolutely is the function of the Workers' Compensation Commission to decide questions of facts, judge credibility, weigh medical testimony opinion with one another. While we hone in on what appears to be the critical issue, the Commission seemed to seize on Gleason's addendum report and his other reports for determining the lack of a causal connection. Did they confuse some issues here or conflate some issues? What's your position? That's a very valid point, Your Honor. It is stated fully that Dr. Gleason's report is confusing. It doesn't make a decision. And I think that's vital here, and I'll stress one of the arguments here. The issue is that he saw the petition in the first report. If you read it, if you read it and you look through it thoroughly, there's a denial of causation, then there's an interrogatory where he accepts causation, and then he gives another IME report later in which he reviews a functional capacity evaluation, and he finds that there is a permanent restriction and that it is related to her accident at work. This is confusing. That's evidence in front of the court. Why is it confusing? Take this a step further. If she has a permanent restriction from an injury that exists, how then is it not possible that she has a condition for the rest of her life, but it's not reasonable and that his indications or Dr. Lorenz's surgery that he ultimately performed were not reasonable for the petitioner to keep going to get those procedures? That would be part of the problem with Dr. Gleason's report. Let me get specific. With respect to Dr. Gleason's testifios, my opinion, the claimant had reached maximum medical improvement with respect to the 5, 10, 11 injury. He didn't say anything about, in their reporter's deposition testimony, identified any changes with regard to the condition or intervening event, breaking the causal connection. So I'm struggling to find out what's different about this case. There's an accident. The doctor says it's an MMI and somehow the commission says, well, that breaks the chain of a causal connection. Isn't that part of what they seem to be doing here? They're conflating the two of them, maximum medical improvement with a causal connection. Correct, Your Honor. I think the causal connection is given by Dr. Gleason. It's obviously given by Dr. Lorenz. Well, counsel stated it another way. The commission stopped or found its termination date as being October the 9th, 2011, in terms of causal connection, right? What in the record exists documenting October 9th, 2011, in terms of anything of significance? Isn't the only thing Dr. Gleason's second IMEA reported? It appears that that's the date that they picked based on the current UR record.  Just in terms of the commission's determination and causal connection, determining it as of October the 9th, 2011, we have to determine, okay, what significance is that date? What is it that happened on that date that supports the commission's determination? It would seem in reviewing the record, the only thing would be Dr. Gleason's report, right? Correct. I don't see a change in her medical symptoms. I don't see a change in the medical documentation besides what he has written and based on his physical exam and those other factors. Okay. So the only thing that's in Gleason's October 9th, 2011 report is her determination, basically, that she's an MMI. Correct, which we feel is not – should cut off her medical treatment at that point, and not only that, but if it's the commission's – In terms of MMI, correct, but they make it, as it sounds, that she could still be suffering the condition past the point of MMI. That doesn't automatically terminate causal connection. I'm not happy to agree with that. Well, that has to be your argument here as to why the commission erred. Correct. The two are not the same. Because somebody's an MMI, put very simply and bluntly, doesn't mean there's no causal connection with the original work, right? Absolutely, Your Honor. And I don't want to bring this – take it back a little bit to Dr. Lorenz's reports. And I'm persuasive in this. The statements within the commission's entire decision, I believe, are simply inconsistent. And especially, there's a line that says, neither Dr. Semmel nor Dr. Lorenz can give you any opinion as to how a left-sided impact, left-sided symptoms, can explain a right-sided disc herniation. It's said in there, however, neither Dr. Phillips nor Dr. Lentz were able to explain how the estimate described initially as left-sided with corresponding left-sided symptoms would result in right-sided myelodysculpture, myelopulsa would be a leg degenerator. That's incorrect. The record has it, Dr. Lorenz testified in his own deposition testimony, that the disc herniation was right-sided. The leg symptoms were related to an annular tear causing irritation and impingement. Plankton's annular tear occurred as part of the accident. It's an inflammatory process. He gives an explanation, yet the commission completely disregards it or indicates that it wasn't in the record. But Dr. Lorenz, you have an opinion as to causal connections relative to a current or then-current condition. And the commission's decision at the beginning of it, when it gets into the causal facts. Not much of what the commission said. Does the record contain an opinion by Dr. Lorenz? It does. And when the commission read that opinion, it indicated the mechanism of injury was a striking of bifurcum. However, it was Dr. Lorenz's opinion. Dr. Lorenz's opinion? The causal connection between the fourth injury and Hyman's then-condition. Thank you. I'm sorry for interrupting. The opinion's not based on a mechanism, but on the lack of pain complaints. That's what he said. He says the patient reported no pain prior to the particular accident and was in full function. So my opinion is that she was struck with the forklift, and that was the cause of the patient's condition. There's his causation opinion. He is certainly looking at the pain complaints before an incident happened. I don't think his focus was on the mechanism of injury. They found that unpersuasive as part of their opinion. And then to go further, they indicated that Dr. Lorenz was not as persuasive as Dr. Gleason because of the 10-month record, 10 months of records that he did not have at his disposal for review. But yet the commission goes on to state that it's well-established the workers' compensation cases that physicians base their diagnosis, treatment recommendations, and opinions in part on the patient's history. So it's well-established that the patient's history is adequate to support a doctor's opinion, yet Dr. Lorenz's testimony regarding her description to him and the information she detailed to him is not important. It seems contradictory. Finally, Your Honors, in regards to the TTD and the other benefits, I think there was, getting over the causation, the MMI point, I believe the TTD benefits, we are agreed that some were paid, and further, that the reasonableness and necessity of the medical, in particular the surgery, were laid out by Dr. Lorenz. And finally, Dr. Semenow did give his opinions, if this court found that the surgery was necessary, that that surgery ultimately facilitated another, well, it does facilitate another surgery to pursue another process. And for these reasons, we ask the commission to reverse the opinion. Very good. Thank you, Your Honor. Thank you, Counselor. Do you have time in your report? Thank you, Your Honor. Counsel, you may respond. Good morning, Justices. Counsel Tory McCann here on behalf of Schneider National. As Counsel noted in his brief, as accepted here, this is a manifest way case. I cited inner city. I understand you're, you know the standard, but I think what happened here at the commission is clearly in line with what they're charged to do, what their unique function is, and that is to decide factual questions. What evidence supports their termination of the causal connection on October 9, 2011? Thank you for that question. There's plenty of evidence in the record. First, she suffered a Specifically what evidence? Dr. Gleason's IME plus the negative radiology, the lumbar MRI, and the hip. What evidence is there that she no longer suffered any compliance relative to her condition following October 9, 2011? The evidence is with regard to the condition. The condition, she had an extensive workup at that time with multiple doctors. She wasn't deemed to be surgical. There was recommendations for an injection at one point. She initially complained of a hip contusion that migrated to the low back. That was worked up. There was MRIs of the lumbar spine and hip, which were negative. And at that point, Dr. Gleason judged her not surgical and incapable of returning to work. Not that her condition stabilized, because that's the MMI termination, but what evidence is there that the condition resolved? There's objective evidence. I'm referring to it. I'm not sure exactly how else to answer that. The condition identified October 9, 2011. That's the date. You heard the questions I asked earlier, proposing counsel. What's significant about that date? The only thing that's in the record is Gleason's second IME report, right? Gleason's second IME report was necessitated by his wish to review the hip MRI. At the first exam, he said, well, she's had a lumbar MRI, and that's clean. But she's also had hip complaints. I recommended an MRI. My client approved the MRI. She went to get it. It was negative. So at that point, he was confident to release her. He's at MMI. But if a person is, the legal question is, because a person's at MMI, isn't that sort of irrelevant to the issue of causal connection? I mean, the commission never found that she no longer had any complaints, had resolved by October 9th. I mean, they seized on Gleason's report that essentially says she's at MMI. Does that in and of itself break the causal connection? The fact that somebody reaches MMI? That happens in most cases, doesn't it? Yes, it does. So why is it different here? The only thing Gleason said on that date in his report was that she reached MMI. And no further treatment would be necessary or related. So how does that break the causal connection? Think about that. Give us your argument of why that in and of itself breaks the causal connection. That's what we're struggling with. Okay. Well, there's definitely evidence in the record, which the commission doesn't explicitly point out in the decision. But they're relying on Dr. Gleason. They state Poley's persuasive and Lorenz and Shimano are unpersuasive. And Lorenz and Shimano relied on the petitioner. That's essentially they acted based on subjective complaints. Right. The conclusion is reached by the commission. We understand that. But what did they opine? Did they opine that the causal connection was broken? Or did they opine that the claimant was at MMI? There's obviously a difference, right? I suppose there's, yes, there is a difference between causation and MMI. The main issues in dispute, though, is whether treatment and benefits would be warranted after October 9, 2011. And I think the record supports the commission's decision. There's plenty of facts in the record, as well as reasonable inferences that the commission made, specifically with regard to Dr. Lorenz. And, really, the issue here is Dr. Lorenz pursued a fusion surgery based on axial backing. There wasn't anything radically suggesting that surgery would have been appropriate for her. She had her own treating doctor, Dr. Farrell, also opine that she wasn't a surgical candidate. And he had nothing for her, released her. That was right before releasing his opinions, as well. So she was given a shake to, I mean, she was given a fair amount of a shake, and my client offered those benefits during that time. She decided to go off and seek treatment with Dr. Lorenz and Dr. Phillips, and she went down that path. Quite frankly, I think that's the record is clear there, and the commission had the benefit of hindsight. Well, the commission made its determination based on causal connection. I went back here and looked at Lorenz's testimony, Gleason's testimony, Gleason's reports, and I tell you, I can't really discern causal connection opinions in the record here. What did Gleason say about causal connection in this case? What were his opinions, or did he express an opinion regarding causal connection? Well, he found she had reached a state of permanency and gave a 1% AMA rating, which suggested no future treatment would be causally connected to the alleged accident. So when she reaches MMI, there's no additional causally connected treatment that would be related to the alleged accident. You're now conflating MMI and causal connection again, and I thought we had just gotten through that. You're conflating them. The problem we have here is the commission found causal connection. They found causal connection. Read the second page of the arbitrator's decision. There is a causal connection between that and her current condition of well-being. The problem that they're saying is is that whatever her condition was post-October the 9th was not related to the underlying accident. It has to do with something else. The causal connection, I would answer that. If there was no causal connection between her condition of well-being and her work accident, why in heaven's name would they refer it back to the arbitrator for the term of permanency? If there's a finding of permanency, there obviously has to be a causal connection. Well, the causal connection would be for left hips, right? Yes. So let's talk about what exactly we're talking about here. We're not talking about no causal connection. But that's the way you're arguing it, both of you. You're arguing it as if the commission said there was no causal connection between her conditions of well-being and her work accident. What they said was there was no causal connection between some of her conditions of well-being and her work accident. She had reached, according to the commission, maximum medical improvement on October the 9th, according to Dr. Gleason, for the injuries that were causally connected. They said other injuries, they said, doesn't relate. So it's not a total causal connection. It only has to do with some specific injury. I'll try to set it. And I'm sorry for... And the treatment. There is a left hip strain, and that continues. It's just the surgical force is really the main issue in this case. So the prospective medical treatment, we're back to that question, is what does that relate to? Does that relate to the injuries that were causally connected, or does it relate to the injuries that weren't causally connected? It would relate to the injuries that weren't causally connected, because Dr. Shen now is recommending a re-diffusion at the time of trial to address Dr. O'Meara's failed view. And second of all, even if we were to accept the notion that Gleason put her at MMI on October the 9th, and MMI really has nothing whatever to do with the question of whether a person is entitled to future medical, MMI still fixes the last date for the award of TTD. Yes. There is no TTD after MMI. So now the question becomes, what is the issue, the actual issue on MMI? Is the argument she wasn't at MMI? I let Thompson speak for himself there. Well, I mean... Certainly our position is she was definitely at MMI. I know it's your position, but the problem is the way the issues are fixed really have nothing whatever to do with what the commission did. So, I mean, you know, how do we resolve it on these briefs? I mean, I would suggest that the commission made the right decision based on what happened after October 9, 2011. I think that supports the commission's decision as well. We have a few years after that to see whether Gleason and Farrell were right or whether Luenz was correct. And the finding that, you know, the Bill and Mark condition, the causal connection that severed the MMI, what did I reach for that Bill and Mark condition on October 9, 2011? What's the correct one? You know, to recap again, I would concede that the collective strength related is causally connected. We also have an argument about the referral chain in our brief, which wasn't supported by the commission. I mean, basically, I'm requesting an overview on that because it's with regard to defining refer. The referral question came from Dr. Assange to Dr. Farrell in which he said follow-up with the ortho. He didn't specify who he was referring the patient to. The fact showed that she chose Dr. Farrell, which was her second-choice physician at that time. She later went off and chose Dr. Lorenz through her prior attorney's recommendation. And that was another reason which we believe that treatment would be exploitable as well. You're claiming that the commission erred. Correct. I am claiming that the commission erred, and I'm requesting an overview on that issue. Where's your cross? I'm sorry? Where's your cross appeal? Yeah. It was raised in the commission of all lines circuit court. We didn't file a cross appeal. So we don't talk about it. Thank you. If there's any additional questions. No. Thank you, counsel. Counsel, you may reply. Just briefly, your honors. We started talking about the hip being related in some of it. There's causation in the relationship that the commission speaks about. My point here is that the commission has to judge the credibility of not only witnesses in front of them, but the evidence presented to them and deposition testimony. Dr. Gleason, this is why I think the commission pointed out it's confusing, but they didn't go further into it. Dr. Gleason said in his initial report that there isn't causation to the back. He answers a different interrogatory saying that there is causation. But then in his own deposition testimony, he says that he did find causation regarding Clayton's back. I think that's evidence that he still found causation in separating out the MMI causation issue, but it's still there. It's not just related to the hip. And that's why at this point in time we're asking the court to reverse that decision. Thank you. Thank you, counsel, both for your arguments in this matter. We'll be taking that as an advisement. The deposition shall be adjourned. Thank you.